GEORGE T. RICHARDS AND PRISCILLA, HIS WIFE, *vs.* BENJAMIN SWAN, SAMUEL SWAN, AND THEOPHILUS SWAN, INFANTS, BY JOHN HUGHES, THEIR GUARDIAN AND NEXT FRIEND.—*December* 1848.

A duly authenticated copy of a guardian's account, passed by the orphans court, is *prima facie* evidence to prove, that at the date of such account, the wards, in whose favor it was stated, were minors, and that the account-ant was their guardian, and as such, owed them the amount therein stated to be due them.

A guardian passed his account in the orphans court on the 27th of June 1843, admitting therein a large indebtedness to his wards. And on the

Richards and wife, *vs.* Swan, *et al.*—1848.

15th of July 1844, executed a deed and bill of sale, conveying certain real and personal estate to his daughter. Upon proceedings by the wards to vacate these deeds, as fraudulent as against them and other creditors, it was HELD:

That the admissions in this account were evidence against the grantee in said deeds, though similar admissions in the answer of the guardian, might not be evidence against the said grantee, his co-defendant.

Admissions of facts, made at a time when they were not in dispute, by a person having then no interest to make false admissions, and making them to charge himself, are evidence against him, and those claiming under him by title, subsequent to such admissions.

Where the *prochein ami* of an infant dies during the prosecution of the suit, the court will appoint another.

Where a guardian has been removed by order of the orphans court, the ward may, during his minority, come into court by his next friend, and call such guardian to account.

Prior to the act of 1835, ch. 380, the general rule was, that a creditor, before he could file a bill in equity to pursue property fraudulently conveyed, must obtain, by judgment or otherwise, a lien on the property ; but that act has removed the necessity of a lien as preliminary to this mode of equitable relief.

There is no ascertained rule of law which fixes and determines, what acts or declarations of a party shall, in all cases, be requisite to establish fraud. Each case must depend upon its own circumstances.

The conveyances in this case were vacated, upon proof that they embraced all the grantor's property, real and personal, were made to his daughter, who never did and never could have paid the considerations expressed in them ; that at the time of executing them, the grantor was greatly in debt, and shortly afterwards applied for the benefit of the insolvent laws, returning no property in his schedule ; and that the whole transaction was a scheme to defraud creditors.

APPEAL from the Court of Chancery.

The appellees (the complainants below) on the 25th of October, 1844, filed their bill on the equity side of *Charles* county court, by *Allison Roberts,* their guardian and next friend, against the appellants and one *Zachariah Dent,* praying that certain conveyances which had been made by *Dent* to the defendant, *Priscilla Richards,* might be set aside and vacated, as fraudulent against his creditors. They alleged that *Dent* had been, by the appointment of the orphans court of *Charles* county, acting as the guardian of the complainants, and in that capacity had become indebted to each of them in a large sum

of money ; that he also is indebted to other persons, by judg-
ment and otherwise, and is greatly embarrassed in his circum-
stances. That, being thus embarrassed, and with a view to de-
fraud complainants and his other creditors, the said *Dent*, on
the 15th of July 1844, executed to his daughter, *Priscilla M.
Richards*, a bill of sale of all his personal property, consisting
of slaves, &c.; and on the same day, and with the same fraud-
ulent purpose, conveyed to said daughter all his real estate ;
that the consideration of $7000, mentioned in each of these
deeds, never has been paid by either *Richards* or his wife, and
that they are fraudulent and covinous. That after the execu-
tion of the deeds, the orphans court, upon application, re-
voked the authority of *Dent*, as their guardian, and appointed
*J. Hughes*. The bill, after stating other circumstances indic-
ative of the alleged fraud, charged that *Dent* was, at the time
it was filed, a petitioner for the benefit of the insolvent laws.
The prayer was, that the deeds might be set aside, as fraudu-
lent against creditors; the complainants paid their claim, and
for general relief.

The answers of *Richards* and wife deny any personal know-
ledge of *Dent's* indebtedness to complainants, or of his affairs
and general pecuniary embarassments, or of his design, in the
execution of the deeds. They allege, however, that these in-
struments were executed for the full considerations mentioned
in them; and, as to themselves, deny all fraud. They admit
that but $7000, out of the $14,000, mentioned as the con-
isderation of the deeds, was paid. They also insist, that
the complainants, if they have claims against the said *Dent*, as
their guardian, should proceed upon his bond, at law, and not
in equity, against the defendants, in respect of property, for
which they allege they have paid, and to which they have a
fair title.

The answer of *Dent* admits, that he was appointed guardian
to the complainants, and gave bond for the faithful performance
of his duties, as such ; the *prochein ami* of the complainants
being such surety. He also admits his indebtedness to com-
plainants, and that he is indebted to other persons ; but, that
the conveyances to his daughter were made for a full and

valuable consideration, the said consideration being but $7000, and not $14,000, as expressed in the two deeds. He admits himself to be a petitioner for the benefit of the insolvent laws, yet insists that he always intended to pay the complainants, and denies the fraud imputed to him.

On the 30th of December 1844, the complainants, by *John Hughes*, filed their petition, stating, that since the commencement of the suit, the said *Allison Roberts* had departed this life, and that said *John Hughes* had been appointed and qualified as guardian in his stead ; and praying that said *Hughes* may be permitted to appear as their guardian and next friend, and prosecute the suit as such. The court (CRAIN, J.,) on the same day, passed on this petition the following order. " Ordered, that the prayer of the within petition be granted, and that *John Hughes* may appear as the guardian and next friend of *Benjamin Swan* and others, in their suit against *Zachariah Dent* and others."

The deed and bill of sale exhibited with the bill, are dated 15th of July 1844, each purporting to have been executed for the consideration of $7000, paid by *Priscilla M. Richards* to said *Dent*, and conveying to her a number of tracts or parcels of land, and several negroes, and other personal property. After various other proceedings in the cause, and its transfer to the chancery court, under the act of 1835, ch. 380, upon the hearing thereof, it appearing that the trustee of *Dent*, upon his application for the benefit of the insolvent laws, had not been made a party to the bill, the chancellor, (BLAND,) by an order of the 5th of November 1846, directed the case to stand over, with leave, by a supplemental bill or otherwise, to make said trustee a party.

And on the 28th January 1847, such a bill was accordingly filed, alleging, that upon application of said *Dent*, *George T. Richards* had been appointed his trustee and duly qualified as such, and praying subpœna against said *Dent*, *Richards* and wife, requiring them to answer such supplemental matter.

The defendants, *Richards* and wife admit, in their answer to this supplemental bill, *Dent's* application for the benefit of the insolvent laws, and the appointment of *Richards* as his

47    v.7

trustee ; and pray that complainants may be required to file a copy of the proceedings upon this petition, that their character may be better understood. The answer then proceeds to state, that at the execution and delivery of said conveyances, impeached as fraudulent by the original bill, they, the defendants, and each of them, were uninformed and ignorant of any intention or design, on the part of *Dent*, to hinder, delay or defraud his creditors, or any of them, or to injure, wrong or prejudice any person or persons whatever. "And the said defendant, *Priscilla*, answering for herself, says, that the conveyances were *bona fide* executed and received, so far as she is concerned, and for a full and valuable consideration paid therefor, to the said *Dent*." The defendant, *George T. Richards*, speaking as trustee, says he has no title, as such, to the property, and interposes no claim thereto. The defendant, *Dent*, not answering said supplemental bill, the omission was afterwards supplied by agreement. The complainants excepted to the answer of *Richards* and wife, on the ground that it responds to matter contained in the original bill, and insisting that defendants should have responded simply to the matter contained in the supplemental bill.

Exceptions were also filed by the defendants, (*Richards* and wife,) to the averments of the original bill.

1st. Because it was not therein shown, that the said *Dent* had violated his trust, as guardian, or wasted or misapplied the money or property of his wards, at the time of executing the deeds complained of.

2nd. That the said bill shows no title, legal or equitable, on the part of the complainants, to impeach the said deeds.

3rd. That the bill does not show the complainants to be remediless at law in the premises.

4th. That the complainants do not show that they have obtained a legal or equitable lien on the property conveyed, they being only stated to be creditors at large of said *Dent*.

5th. That the said bill does not contain a prayer for a sale of the property conveyed.

The proceedings upon *Dent's petition* for the benefit of the insolvent laws, show, that he made his application on the 23rd

of October 1844, exhibiting, a list of his creditors; that the heirs of *Benjamin Swan* were returned as creditors, to the amount of $2900, and upon allegations filed by *John Hughes*, the present guardian of complainants, the jury found that he *(Dent)* had made voluntary and fraudulent transfers of his property, prior to said application, and thereupon said petition was dismissed. The defendant, *George T. Richards*, was appointed trustee of said petitioner, at the time of said application, but no property was returned by him. It also appeared, that in June 1836, *Richards himself*, applied for the benefit of the insolvent laws. Commissions were issued, under which evidence, written and oral, was returned, the purport of which will sufficiently appear from the opinion of the chancellor, (Johnson,) who, on the 5th of May 1847, passed a decree, sustaining the exceptions of the complainants to the answer of *Richards* and wife to the supplemental bill, and vacating and annulling the conveyances from the defendant, *Dent*, to the defendant, *Priscilla*, dated the 15th of July 1844, as fraudulent and void, as against the complainants and others, creditors of the said *Dent*, and directed the property conveyed by them to be sold, and appointed trustees for that purpose, who were directed to give notice to the creditors of *Dent*, to file their claims in this court. Accompanying this decree, the chancellor delivered an opinion, in which, after stating the facts of the case, he proceeds as follows :

"Without going into any detailed statement of the proof, the chancellor, after a very attentive reading of it, is of opinion that the merits of the case are unquestionably with the complainants, and that they are entitled to the interposition of the court in their favor, unless such interposition is prohibited by some insuperable legal or technical difficulty. The proof in my opinion establishes the following propositions.

1. That *Dent* is now and was indebted to the complainants, his former wards, to a considerable amount, at the period of the execution of the deeds complained of, and that he was also, at the same time, indebted to other persons.

2. That in October 1844, his authority as guardian was revoked by the orphan's court, upon the application of his

sureties for counter security, one of which sureties was the party by whom the present bill was filed, as guardian to the infant complainants, and the other the party by whom, in the same capacity, the suit is now carried on.

3. That the said deeds embraced all the grantor's property; of which, or of a considerable portion of which, he retained the possession and use.

4. That in October succeeding the execution of the deeds, the grantor petitioned for the benefit of the insolvent laws, returning no property in his schedule; and,

5. I am satisfied from all the circumstances of the case, as disclosed by the evidence, that the party to whom the deeds were made, never did, or could have paid the consideration as therein contained, and that the entire transaction was a scheme to defraud, his, the grantor's, creditors.

Before adverting very briefly to the points presented in the argument of the defendant's solicitor, it may be proper to remark, that the chancellor thinks the complainants' exceptions to the answer of *Richards* and wife to the supplemental bill, are well taken and must be sustained.

He is of opinion, that though the original and supplemental bill constitute but one record, and must be so regarded at the hearing, yet, as these defendants had before answered the original bill, their answer to the supplemental bill should have been restricted to the matters stated in it, and that they had no right, under pretext of answering the supplemental, to add to or amend their answer to the original bill. 1 *Daniels, Ch. Pr.*, 456. 2 *Ib.*, 839. *Thomas vs. The Visitors of Fred'k. School*, 7 *Gill and Johns.*, 369.

The first objection urged by the defendant's solicitor is, that during the minority of the wards, no proceeding can be instituted in their names, against their defaulting guardian. But in this case the relation of guardian and ward had terminated before the commencement of the suit, and consequently the guardian's trust being personal, the infant has the same right to call him to an account, as he would have to call his representatives to an account, in case of his death. And it has been decided that in case of death the infant may sue as if he was of age. And

though an infant himself cannot call his guardian to account where the relation subsists, but must wait until he attains his majority, yet a third person may do so during the minority, for the benefit of the infant of whose interest the law is especially careful. *Eyre vs. The Countess of Shaftsbury*, 2 *Peere Williams*, 119.

The chancellor, therefore, thinks that this objection cannot be maintained. The next objection is, that the present bill, which seeks to render the property conveyed by these deeds liable for the claims of the complainant, cannot be supported unless a lien is shown, or at least, a failure of any remedy to recover the claim at law.

But the office of guardian is that of a trustee, and the general power of this court to superintend the execution of trusts, is expressly preserved by the 16th sec. of the act of 1798, ch. 101, sub. chapter 12.

It is undoubtedly true that prior to the act of 1835, chapter 380, the general rule was, that before a creditor could file a bill in equity, to pursue property fraulently conveyed, he must have qualified himself so to proceed, by obtaining a judgment with respect to real property and a judgment and *fieri facias* where personal property is to be reached: but it is equally true that there are some exceptions to the rule as shown by the case of *Birely & Holtz vs. Stanley*, 5 *Gill & Johns.*, 433, and it is possible that, as in this case, the guardian who instituted and prosecuted this suit, is the surety in the bond given by *Dent* for the faithful performance of his trust as guardian, and consequently could not himself maintain an action on the bond, at law, this case might be regarded as constituting an exception to the general rule, *Graham vs. Harris*, 5 *Gill & John.*, 490.

It is not, however, necessary to decide this question, as it seems to me clear that the 2nd section of the act of 1835, ch. 380, relieves this case from the objection, admitting that, independently of this act, it would have been fatal. The legislature by the enactment in question, have most explicitly exempted creditors from the obligation to obtain judgment, before they shall be permitted to proceed in equity to vacate fraudulent conveyances. The objection upon the ground of inconvenience

in the execution of the law, the chancellor thinks, may be readily overcome by the application of the ordinary rules and principles which govern the court in analagous cases.

This bill charges, that the deeds which it assails were of all the grantor's property, and that they were without consideration, and to hinder, delay and defraud the complainants who were his creditors, as well as his other creditors.

It prays that they may be set aside as fraudulent, that the claims of the complainants may be paid, and for general relief.

The chancellor thinks the complainants have both stated and proved a sufficient case, and will sign a decree vacating the conveyances, and appointing a trustee to sell the property."

From this decree the defendants, *Richards* and *wife* appealed to this court.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN, MAGRUDER and FRICK, J.

By ROBERT J. BRENT, for the appellants, and
By CAUSIN and ALEXANDER, for the appellees.

SPENCE, J., delivered the opinion of this court.

The argument of the appellant's solicitor in this cause, insists, that the decree of the chancellor should be reversed, "because the infancy of the complainants should have been proved, as it was material."

The account proved by *Zachariah Dent*, and passed by the orphans court of *Charles* county, on the 27th day of June 1843, a duly authenticated copy of which, from the records of said court, was filed in this cause, marked exhibit C, is *prima facie* evidence to prove, that on the 27th day of June 1843, the said *Dent* admitted, that *Benjamin Swan*, and *Theophilus Swan*, were minors, that he was their guardian, and that as guardian, he was indebted to them the amount stated in said account.   The account is stated as follows, "*Benjamin Swan, Samuel Swan, Theophilus Swan*, minors, in account with *Zachariah Dent*, their guardian." It is true, exception was taken to this account, as inadmissible in evidence because of its form, and it was insisted that it was not accord-

ing to the requirements of the law, being raised, or embracing the accounts of the three minors in one statement, when they should have been separate and distinct accounts. We are not aware of any form prescribed by law, and we are well satisfied that there is no provision of law to exclude this account, as an admission, on the part of *Dent*, that he was guardian to the three *Swans*, and that as guardian, he owed them the a-mount, stated by him in this account to be due to them. But it was insisted that these admissions of *Dent*, were not evidence against *Richards* and wife, and as they had not admitted these facts in their answers, the admissions of *Dent*, in his answer, or otherwise, could not be evidence against them. Let it be conceded, that the admissions of *Dent* in his answer are not evidence against *Richards* and wife, it by no means follows, that his admissions, made by this account, exhibit C, are not evidence against them. *Mrs. Richards* claims title under the deed and bill of sale, sought to be set aside in this case,— under *Dent*,—which deed and bill of sale were executed on the 15th of July 1844. The admissions made in this account were made on the 27th of June 1843, nearly a year before *Dent* executed the deed and bill of sale to his daughter, *Priscilla Richards*. It certainly cannot be questioned, that admissions made by him of facts, of which he was conusant, at a time when they were not in dispute, having no interest to make false admissions, and making them to charge himself, are evidence against him, and those claiming under him, by title, subsequent to such admissions. In this account, *Dent* states these complainants are minors, that he is their guardian, and as such has received the amount, stated in this account to their credit; and as their guardian, has disbursed for them, in their maintenance, &c., the several sums of money therein charged to them, all of which he has verified on oath. It is to be remembered, that these admissions are made at a time when *Dent* is in the possession of all the estate, real and personal, embraced in the two deeds, which the bill of complaint, in this case, seeks to vacate and set aside, on the ground, that they were made and executed for the purpose of defrauding, and with the view to hinder and delay the complainants, and the other creditors of the said *Dent*, from recovering their money.

These declarations and admissions, made by *Dent* the grantor in these deeds, anterior to their execution, certainly are competent and admissible evidence of the facts they tend to prove, against *Priscilla Richards,* the grantee in said deeds. One of the appellant's points in this case, is, that there is no *prochein ami* in this suit. The allegation in the bill is, that *Dent* was the guardian of *Benjamin Swan* and *Theophilus Swan,* that the orphans court of *Charles* county, on the 22nd of October 1844, revoked his guardianship, as is shown by an extract from the record of proceedings of said court, regularly certified by the register of wills of *Charles* county. The bill in this case was filed by the complainants, by their guardian and next friend, *Allison Roberts.* The complainants, *Benjamin Swan* and *Theophilus Swan,* by *John Hughes,* their guardian and next friend, filed their petition in this cause, suggesting the death of *Allison Roberts,* their guardian and next friend, and praying, that *John Hughes* might be permitted to appear as their guardian and next friend in said suit; on which petition *Charles* county court, as a court of equity, at November term, 1844, of said court, passed the following order : "Ordered, that the prayer of the within petition be granted, and that *John Hughes* may appear as the guardian and next friend of *Benjamin Swan* and others, in their suit against *Zachariah Dent* and others.'' If the next friend die, the court will take upon itself to appoint another. *Lancaster vs. Thornton,* 1 *Ambler,* 398. *Bracey vs. Sandiford,* 3 *Maddox* 468. This we deem ample authority to sustain the court in this appointment, without argument on our part.

It was insisted, that during the minority, the wards could not sue for the debt due from their former guardian. Chancellor *Kent,* in *Monell vs. Monell,* 5 *Jno. Ch. R.,* 297, says, that it is too plain a proposition to stand in need of authorities ; that the infant ward may come into this court by his next friend, and call his guardian to account, or require him to give better security, if the state of the case should require it. *Vide* 2 *Pr. Wms.* 119, *Eyre, vs. The Countess of Shaftsbury.* A court of chancery will interpose, if guardians give occasion to suspect their behavior. 1 *Pr. Wms.* 704. *Beaufort, vs. Berty.* In

this case now under consideration, *Dent's* guardianship had been revoked by the orphans court of *Charles* county, before this bill was filed. It was urged in the argument, that these complainants could not proceed in this form to vacate and set aside these deeds, because they had not first obtained a lien on the property, by judgment or otherwise. We concur in the opinion of the chancellor in this case, that this was the rule of law, anterior to the act of 1835, ch. 380, with some exceptions; since this act, however, the necessity of a lien as preliminary to this mode of equitable relief, is obviated. Another ground of objection taken to this decree by appellant's counsel in the argument, is, "that there is no sufficient evidence of fraud or collusion between the said *Zachariah Dent* and the *Richards,* and more especially *Priscilla Richards,* to justify the decree that was thus rendered." There is no ascertained rule of law which fixes and determines what acts or declarations of a party shall, in all cases, be required to establish fraud, but on the contrary, the badges of fraud may, and often do, vary, according to the intellectual capacity and moral depravity of the perpetrator, the end designed to be obtained, and the means by which it is to be accomplished. In this case, we concur entirely in the opinion of the chancellor, in regard to the character of the deeds from *Dent,* the father, to *Priscilla* the daughter. We are satisfied, from the circumstances of the case as disclosed by the evidence, that the party to whom the deeds were made, never did, or could have paid the consideration, as therein contained, and that the entire transaction was a scheme to defraud the grantor's creditors. The decree of the chancellor is affirmed with costs, and the case remanded for further proceedings.

DECREE AFFIRMED, AND CAUSE REMANDED.