Andrew K. Syester, Trustee of Benjamin Cushwa, an Insolvent debtor, *vs.* David Brewer and others.

*Debtor and Creditor—Judgment in rem—Insolvent laws— Allegations—Judgment in personam—What is required to avoid Assignment under the Insolvent Laws—Onus Probandi—Presumption of law consequent upon Lapse of time— Practice in Equity—Laches and Lapse of time—Stale Claims.*

Under the common law, a debtor may secure one creditor to the exclusion of others, by a *bona fide* transfer of his property.

A judgment *in rem* is an adjudication pronounced upon the status of some particular subject matter, by a tribunal having competent authority for that purpose; such an adjudication, being a most solemn declaration from the proper and accredited quarter, that the status of the thing adjudicated upon is as declared, concludes all persons from saying that the status of the thing adjudicated upon was not such as declared by the adjudication.

A. being indebted to various persons, among them to B., his brother, executed to him a deed in fee of his real estate, not exceeding in value the amount of his indebtness to him, and shortly thereafter applied for the benefit of the insolvent laws. He also appointed B. his provisional trustee. One of the creditors of A. filed allegations against him; the first of which charged that the deed from A. to B. was made with a view and under an expectation of being and becoming an insolvent debtor, and thereby to give an undue and improper preference to B.; the second charged that A. executed said conveyance with an intent to deceive his creditors or some of them, or to secure the same, or to receive or expect some profit or advantage thereby. Issues were joined on the allegations, and the same were tried by a jury at the March Term, 1827, of Washington County Court, and a verdict of guilty rendered thereon, and thus A. was prevented from obtaining his final discharge under the insolvent laws. Held:

That the verdict on the allegations was not an adjudication *in rem* and conclusive upon the rights of B., the grantee in the deed; that the status of the property conveyed was not put in issue or adjudicated by the proceeding; that the only issue was the truth or falsehood of the allegations, and the conviction of A. for impropriety and illegality in executing the deed was a judgment *in personam*, which precluded him forever from the benefit of the insolvent laws.

That said verdict did not bind or prejudice the rights of the grantee in the deed, as he was not a party to the proceeding, and had thus no opportunity of calling witnesses or cross-examining those on the other side, or of excepting to any ruling of the Court, or of taking an appeal therefrom; nor did it impose upon him the burden of showing that the grantor had no intention of evading the provisions of the insolvent laws when he executed the deed; nor was it admissible as evidence against him for any purpose.

To avoid a transfer under the insolvent laws it is necessary to establish that the debtor made the same with a view or expectation of taking the benefit of the insolvent laws, and also that he *voluntarily* made the transfer sought to be vacated.

Mere proximity in point of time between the date of the assignment and the application for the benefit of the insolvent laws, standing alone, without any supporting circumstances, is not to be received as adequate or reliable proof of what the insolvent intended at the time of executing the assignment.

The *onus* rests upon the party seeking to vacate a deed, as void under the insolvent laws, to show that the same was made with the view and under the expectation of taking the benefit of the insolvent laws, and of giving an undue and improper preference thereby to the grantee.

After the lapse of more than twenty years from the date of the application for the benefit of the insolvent laws, the law will presume that the insolvent estate is settled and closed, and a Court of Equity would not entertain a bill filed by the trustee of the insolvent estate against grantees, under deeds from the insolvent previous to his application, unless it was satisfied there were *bona fide* subsisting debts due from the insolvent.

Whenever a party knows his rights and does not assert them for twenty years, but acquiesces in the acts of others, the Court will apply to him the maxim "*vigilantibus non dormientibus servit lex.*" The Court in its discretion may refuse to grant relief after a limited period, even though the Statute of Limitations is not pleaded, and the bill is not demurred to.

Laches and lapse of time are as effectual as the plea of limitations, and they are by analogy applied in equity. What will constitute such laches and lapse of time as will bar the right of parties to recover on a claim purely equitable, must depend upon the peculiar facts and circumstances of each case.

Stale claims do not meet the favorable consideration of a Court of Equity, which only lends its aid to reasonable diligence.

APPEAL from the Circuit Court for Washington County, as a Court of Equity.

The bill in this cause was filed on the 22d day of November, 1852, by William Ditto, trustee for the benefit of the creditors of Benjamin Cushwa, an insolvent debtor, to set aside a deed executed on the 14th day of November, 1826, by the said Benjamin to his brother, John Cushwa, as void under the insolvent laws of this State.

The bill alleged, amongst other things, that Benjamin Cushwa applied for the benefit of the insolvent laws on the 19th of December, 1826; that his brother John was appointed his provisional trustee and accepted the trust, but died in the year 1845, before said trust was completed, and that subsequently, in April, 1849, the complainant was appointed the permanent trustee of said insolvent. That the said Benjamin at the time of his application was largely indebted to sundry persons, and amongst them his brother John was the largest creditor, to whom he then owed about $7,300 ; that the said Benjamin, with a view and under an expectation of being and becoming an insolvent debtor, executed the said deed of the 14th of November, 1826, conveying to his brother absolutely all his real estate, which was large and valuable, in payment of the debt he then owed him, thereby to give an undue and improper preference to his brother, as a creditor, and to deceive and defraud his other creditors ; that the said deed was fraudulent and void, as being made with a view and under an expectation of being and becoming an applicant for the benefit of the said insolvent laws.   The bill further alleged that a certain Henry Seibert, one of the creditors of the said Benjamin, at the time of his said application, and to whom he owed about twenty-eight hundred dollars, did, as such creditor, file allegations against the said Benjamin to prevent his getting a full and final discharge under the provisions of said insolvent

laws; that the first of said allegations charged that the said deed was made by the said Benjamin to his brother, with a view and under an expectation of being and becoming an insolvent debtor, and thereby to give an undue and improper preference to his said brother, as one of his creditors; that the second allegation charged the said Benjamin with having conveyed the real estate mentioned in said deed to his brother with a view and under an expectation of being and becoming an insolvent debtor, and with intent thereby to deceive his creditors or some of them, or to secure the same, or to receive or expect some profit or advantage thereby. That issues were joined by the said Benjamin on the allegations, and they were fully and fairly tried by a jury at the March Term, 1827, of Washington County Court, and a verdict of guilty found on said allegations, and a judgment rendered on said verdict, whereby the said Benjamin was prevented from obtaining his final discharge under the insolvent laws; that the said allegations, verdict and judgment thereon, by their legal operation made the said deed absolutely null and void, so that no title passed thereby to the said John Cushwa, the grantee therein named, to the real estate described in said deed, but that the same vested in the said John, as the trustee of the said insolvent, for the benefit of his creditors, and that it was the duty of the said John, as such trustee, to have sold the same and applied the proceeds of such sale towards the payment of all the creditors of the said insolvent, according to their respective rights and priorities, and thus have closed his trust.

But the said John Cushwa did not, however, as trustee as aforesaid, sell said real estate and apply the proceeds of such sale to the payment of the creditors of said insolvent as directed by law, but on the contrary suffered the said insolvent to hold and occupy the same, and to take and use the rents and profits thereof from the day the said deed was

made, down to the day of his death, with the exception of a part thereof known as the "Knavel Farm," containing about one hundred and thirty acres of land, which the said John held and the profits of which he received, from about the year 1828 to the time of his death, the said Benjamin all the time aforesaid, down to the day of his death, and notwithstanding the said allegations, verdict and judgment, continuing in the possession of, receiving the rents and profits, and claiming the said real estate specified in said deed, as his property, and disposing of the same as his estate by his last will and testament. That John Cushwa died in the year 1845, leaving two children, one a son, named John S. Cushwa, the other a daughter, named Elizabeth, who married David Brewer, and all of whom resided in Washington county, and who were then claiming said property as the property of said John Cushwa, deceased, as conveyed to him by the said Benjamin, by the deed aforesaid. That the said Benjamin on or about the second day of March, in the year 1848, duly made his last will and testament, by which he devised said real estate to his widow and children, and died without having revoked or altered the same, and that his devisees were then in possession of and claiming said land by virtue of said last will and testament, alleging that the said deed made by the said Benjamin to the said John, was never intended by either of the said parties to the same, as an absolute deed, but distinctly understood by and between said parties to operate merely as a mortgage to secure the payment of a debt due by said Benjamin to his said brother, a considerable part of which they asserted he subsequently at different times had paid to him.

That to settle these claims of title by and between the heirs-at-law of the said John Cushwa and the devisees of the said Benjamin Cushwa, to said real estate, an action of ejectment had been instituted by the heirs-at-law of the said John, against the said Benjamin in his lifetime, and

had, since his death, been continued against his executor and devisees in Washington County Court, and was then pending in the Circuit Court for said county, for the purpose of recovering the said real estate, which neither in law nor in equity belonged to either of said parties, but was trust property, belonging to the complainant as trustee aforesaid, and ought to be sold by him for the purposes of the trust aforesaid, there being creditors of the said insolvent, who were such at the time of his said application, whose claims and debts were still paid and unsatisfied.

The bill further charged that the said Benjamin in his lifetime, always claimed said real estate as his own, subject to the payment of a debt due by him to his said brother, which debt at the time he made said deed, amounted to the sum of seventy-three hundred dollars, and was the consideration of said deed, which was intended and understood by and between him and his brother, to be a mere mortgage of said land to secure the ultimate payment of said debt, and that although the said deed on its face and in its terms was absolute, yet in fact it was distinctly understood by and between them that the same should operate only as a mortgage for the purpose aforesaid, and that on his payment of the said debt, the land was to be reconveyed to him and his heirs by his brother. That he afterwards, from time to time, paid divers sums of money to his brother in part and on account of said debt, until the same was reduced to the sum of forty-six hundred and eighty-nine dollars and eighty-six cents, and for which balance he gave to his brother a note, on which, after the death of his brother, a suit was instituted by his administrators and a judgment obtained in Washington County Court, at the November term 1847 ; that since the death of said Benjamin, the said judgment had been revived· by a *sci. fa.* and judgment thereon, and that on this judgment a *fi. fa.* had been issued and levied on said land, or the

greater part of it, as the property of the said Benjamin, and the same had been sold by the sheriff under said *fi. fa.*, and the said John S. Cushwa and David Brewer became the purchasers thereof, at the sum of fifty dollars, although the actual value of the same was not less than fifteen or sixteen thousand dollars, but that the sale had not been confirmed.

The bill prayed that the deed might be set aside as fraudulent and void, and the real estate intended to be conveyed thereby, be decreed to be sold by the complainant as trustee as aforesaid, for the benefit of the creditors of the said insolvent, and should the Court be of opinion after the final hearing of the cause that the said deed was not void, but that it was intended by the parties to it to operate merely as a mortgage to secure the payment of the debt due by Benjamin to his brother, and not as an absolute deed, that then the said real estate might be decreed to be sold by the said complainant as trustee as aforesaid, for the payment of the balance of the mortgage debt, and the residue of the purchase money be applied to the payment of the other creditors of the insolvent, according to their respective claims and priorities. The heirs-at-law of John Cushwa and the devisees of Benjamin Cushwa were made defendants and required to answer under oath. William Cushwa, executor of the will of the said Benjamin, and David Brewer, husband of one of the heirs-at-law of John Cushwa, as also James R. Ward, trustee under said will, were likewise made defendants. Benjamin Cushwa, subsequent to the deed to his brother, executed three conveyances of valuable personal property in the nature of bills of sale or mortgages, to three different persons. John S. Cushwa and David Brewer and wife answered the bill, denying all the material allegations therein; and among other things, insisting upon the Statute of Limitations as to all claims, demands, judgments or other debts which might be exhibited against the said

Benjamin Cushwa as of a date prior to his application for the benefit of the insolvent laws. The other defendants filed their answers, submitting to such decree as might be consistent with equity. The death of John S. Cushwa was suggested, and his infant children were admitted as parties to the suit. An agreement was filed in March, 1855, to issue a commission to take testimony, and to admit a part of the record in the ejectment suit, as evidence in this cause, subject to exceptions. After the filing of this agreement, the death of the complainant, which occurred sometime in the same year, was suggested to the Court. No further action was taken in the cause until September, 1863, when Andrew K. Syester, who had been previously appointed trustee for the benefit of the creditors of the said insolvent in the stead of the complainant, came into Court and filed his bill of revivor, or bill in the nature of a bill of revivor, to which the defendants filed their respective answers; whereupon the Court passed an order of revivor. By agreement of counsel a commission was issued to take testimony, and evidence both oral and documentary was submitted. Exceptions were taken on both sides. The cause was submitted upon argument, and the Court (FRENCH, J.) passed a decree dismissing the bill with costs to the defendants. From this decree the present appeal was taken.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*Richard H. Alvey*, for the appellant:

I. As to the standing of the complainant in Court, and his right, as permanent trustee of Benjamin Cushwa, to prosecute this proceeding, and to obtain the relief sought by the bill, if the material allegations thereof are found to be sustained:

There is no ground for the supposition, that because

Benjamin Cushwa did not succeed in obtaining the benefit of the insolvent laws, therefore the provisional trustee ceased to hold the property *in his fiduciary capacity,* and that it remained vested, or became re-vested, as if no application had been made; for, apart from the provisions of the Acts of 1812, ch. 77, and 1816, ch. 221, the Act of 1825, ch. 205, sec. 8, expressly provided for the appointment of a provisional trustee, "for the creditors of the said applicant," and no personal discharge could be granted to the applicant until the provisional trustee gave bond, with approved security, "conditional for the faithful discharge of his trust," and until the applicant should execute to the provisional trustee, "a good and sufficient deed for *all his estate, both real and personal,*" wearing apparel, &c., excepted, "for the benefit of the creditors of the said applicant." And by the 10th sec. of the same Act, it was provided, "that, upon the appointment of any permanent trustee, it shall be the duty of the said provisional trustee to execute a good and sufficient deed for the real and personal estate of the said insolvent debtor, except as is hereinbefore provided, *to the said permanent trustee, and to deliver over to the said permanent trustee all the real and personal estate of the said insolvent debtor,* except as aforesaid, *for the benefit of his creditors.*" It was under this Act of 1825, that Benjamin Cushwa obtained his personal discharge, and John Cushwa, the provisional trustee, gave his bond, and accepted the deed of the applicant, according to the requirements of the Act; and thus became vested with all the property of the applicant, *in trust,* for the benefit of the creditors of the applicant, and the permanent trustee that should be thereafter appointed. *Kennedy vs. Boggs,* 5 *Har. & John.,* 403.

This not being a bill by creditors against an insolvent trustee for the administration and distribution of the insolvent's estate, but a proceeding by a permanent

trustee against the heirs-at-law of a deceased provisional trustee, for the purpose of removing unfounded pretensions, and the recovery of assets to be administered in the proper jurisdiction, the remedy adopted is not only proper, but the only one that could be effectually pursued, to accomplish the purposes in view. *Dulaney vs. Hoffman,* 7 *Gill & John.,* 170; *Purviance, Trustee, vs. Glenn's Ex'rs,* 8 *Md. Rep.,* 202; *Jamison vs. Chesnut et al.,* 8 *Md. Rep.,* 34.

II. As to the question of there being no creditors of Benjamin Cushwa, the insolvent applicant, and the bar of the Statute of Limitations to the claims of creditors, suggested and relied on in the answer:

The record shows that there are creditors who remain unpaid; and there is no evidence in the case that any debt, existing at the time of the application, has since been paid. The proceedings which have taken place on the insolvent application, in the appointment of permanent trustees, since the death of John Cushwa, are judicial recognitions of the existence of creditors, and there is no power in this Court, in this collateral proceeding, to question the rightful appointment and representative character of such trustees appointed by the insolvent Court. The appointments were made upon the allegation and satisfactory proof that there were creditors then existing, interested in the execution of the trust. *Powles et al. vs. Dilley et al.,* 9 *Gill,* 223.

The answer of William Ditto, the first permanent trustee, to the interrogatories of the defendants, establishes the fact of the existence of creditors; and this answer, by the Act of 1785, ch. 72, is made evidence against the defendants.

But it is not competent for the defendants, under the circumstances of this case, to question the existence of creditors; nor is it competent for them to plead or rely upon the Statute of Limitations to the claims of creditors,

*as a defence to this proceeding taken by the trustee;* nor are the claims of creditors liable to the bar of the Statute of Limitations. *Ex parte Ross, in the matter of Coles,* 2 *Glyn & Jameson,* 46; *Barton vs. Tattersall,* 1 *Russ & Mylne,* 237; 2 *Dan. Ch. Pl. & Pra.,* 732, 733 (*Ed. of* 1856;) *Angel on Limt.,* 162; *Hudgins et al. vs. Kemp,* 20 *How.,* 45, 53.

III. As to the fraudulent character of the deed of the 14th November, 1826, to John Cushwa, and the intent of the grantor, at the time of the execution of such deed, to apply for the benefit of the insolvent laws, and thereby to give an undue and improper preference :

It is necessary to ascertain the condition of mind of the grantor in the deed at the time of its execution; his intents and purposes; for the principle upon which insolvent and bankrupt systems proceed being to put all creditors on terms of equality as near as possible, so soon as the party has formed in his mind a definite intention of applying for the benefit of the insolvent law in the one case, or of committing an act of bankruptcy in the other, he at once becomes disqualified to dispose of his property; and if he does dispose of it, and it is followed by an insolvent application, or act of bankruptcy, those acts relate back and annul the act of disposal. Hence it is *only* necessary to establish that it was "with a view, or under an expectation of being or becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference," that the deed of the 14th Nov., 1826, was executed, to render it void, and that without reference to the consideration, or the intent of the grantee. And hence, upon inquiry, if it be found that the conveyance was executed with such view and expectation on the part of the applicant, the law not only defeats him in obtaining his discharge, but renders the instrument absolutely void, and vests the property in the trustee for the benefit of the creditor. *Acts of* 1812, *ch.*

77; 1816, *ch.* 221; *Dulaney vs. Hoffman,* 7 *Gill & John.*, 170; *Shawhan et al. vs. Wherritt,* 7 *How.*, 627, 644; *Buckingham et al. vs. McLean,* 13 *How.*, 151, 168, 169, 170, 171.

The facts and circumstances which surrounded and gave character to the transaction, not only demonstrate clearly that Benj. Cushwa made the deed of the 14th Nov., 1826, to his brother John, with a view and under an expectation of being or becoming an insolvent debtor, but that there were fraudulent intents and purposes on the part of both Benjamin and John in the concoction of said deed, and that John was the leader in the whole transaction. *Dulaney vs. Hoffman,* 7 *Gill & John.*, 170.

The verdict upon the allegations against Benjamin Cushwa, is not only admissible as evidence in the cause, but is conclusive evidence of that state of mind, and the view and expectation under which the deed of the 14th Nov., 1826, was executed, that rendered it utterly void, and vested the property in John Cushwa, *as trustee. Acts* 1805, *ch.* 110, *sec.* 9; 1812, *ch.* 77; 1816, *ch.* 221. The proceedings on these allegations are all matter of record, and took place in a Court of competent and exclusive jurisdiction, both as to the parties affected, and the property attempted to be conveyed. *Waters vs. Dashiell,* 1 *Md. Rep.*, 455. And in point of fact, as well as in contemplation of law, the said John Cushwa was present, and actively participated in the said proceedings, and would, upon that ground, if upon no other, be bound and concluded by the verdict. 1 *Greenl. Ev.*, *secs.* 542, 543, 544; *also secs.* 523 *and* 524; 1 *Stark. Ev.*, *Part* 2, 225, (*Metcalf's Ed.;*) 1 *Hale, Pl. Cr.*, 361; 2 *Hawk, Pl. Cr., ch.* 50, *sec.* 2; *Shawhan et al. vs. Wherritt,* 7 *How.*, 627; *Barney vs. Dewey,* 13 *John.*, 224; *Chicago City vs. Robbins,* 2 *Black,* 418; *Charlotte Hall School vs. Greenwell,* 4 *G. & J.*, 407; 2 *Smith's Lead. Cases,* 585, 586.

The verdict is at least *prima facia* evidence; and it would also be admissible as a muniment of title; for by

the finding, there was a change produced in the vesting of the estate attempted to be conveyed by the deed of 14th Nov., 1826. *Shawhan et al. vs. Wherrit,* 7 *How.,* 627; 1 *Greenl. Ev.,* sec. 539; *Hall vs. Warren,* 9 *Vesey,* 609; *Hutchinson et al. vs. Sandt et al.,* 4 *Rawle,* 234.

There being no formal judgment rendered on the verdict, forms no objection to its admissibility, for no judgment was required to give effect to the verdict, nor was any judgment directed or authorized by law, the verdict alone effecting a denial of the benefit of a final discharge to the applicant, and the Court having no control over it whatever. *Act of 1805, ch.* 110, *sec.* 9; *Act of 1825, ch.* 205; *Felter vs. Mulliner,* 2 *John.,* 181; 1 *Stark. Ev., Pt.* 2, 245; *Bul. N. P.,* 234.

IV. As to the fiduciary character of John Cushwa, and his relation to the property attempted to be conveyed by the deed of the 14th November, 1826; and as to his right, or the right of those claiming under him, to rely upon the adverse holding:

The defendants having taken process against the lands in controversy, and obtained a judgment upon which they issued a *fi. fa.,* and procured said lands to be sold as the lands of Benjamin Cushwa, they themselves becoming the purchasers thereof, at sheriff's sale, are precluded and estopped from setting up a prior title in themselves, or in John Cushwa, under whom they claim, by virtue of the deed of the 14th November, 1826. 1 *Greenl. Ev.,* sec. 205; *Sayles vs. Smith,* 12 *Wend.,* 57.

John Cushwa having accepted the trust by giving his bond, taking the deed from the applicant, and making the certificate, as required by the Act of 1825, he could not denude himself of such trust, but was bound to execute it and only be discharged therefrom by the order of the Court. *Hill on Trust.,* 214, 219, *(marginal paging;)* 2 *Spence's Eq. Jur.,* 48, 920; *Hanson and Wife et al. vs. Worthington et al.,* 12 *Md. Rep.,* 418, 438.

This being an *express* trust, created by the act of the parties, and to be administered under the control of a Court of Record, the order of which was necessary to discharge the trustee therefrom, is not barred by the length of time that has elapsed since its creation ; " for in such cases there is *no adverse possession,* the possession of the trustee being the possession of the *cestui que trust.*" *Hill on Trust.*, 264 ; *Glenn, Adm'r, d. b. n., of Lindenberger, vs. Hebb's Adm'r et al.*, 17 *Md. Rep.*, 260 ; *Beckford vs. Wade,* 17 *Ves.*, 97 ; *Hovenden vs. Ld. Annesley,* 2 *Sch. & Lefr.*, 633 ; *Wedderburn vs. Wedderburn,* 4 *M. & Cr.*, 52, *and* 2 *Keen,* 722 ; *Thompson vs. Simpson,* 1 *Drury & War.*, 459 ; *Chalmer vs. Bradley,* 1 *Jac. & Walk.*, 51–67 ; *Fishwick vs. Sewell,* 4 *Har. & John.*, 393, 428, '30 ; *Barton vs. Tattersall,* 1 *Russ. & Mylne,* 237 ; *Ex parte Ross, in the matter of Coles,* 2 *Glyn & Jam.*, 46, 47 ; 2 *Danl. Ch. Pr.*, 732, 733, (*Ed. of* 1856 ;) *Hudgins et al. vs. Kemp.*, 20 *How.*, 45, 53.

And there was in fact no *actual* adverse possession by John Cushwa of much the larger portion of the land.

V. As to lapse of time as a defence, though not pleaded or set up as a defence in the answer :

Though it be true, as a general rule, that Courts of Equity, while not embraced within the letter of the Statute of Limitations, will apply the bar in analogous cases, yet this case being one of *express trust,* the rule does not apply ; and lapse of time, *as a fact,* forms no objection to the enforcement of a trust like the present, where the character of the trust, and the particular facts are to be considered, and where the trustee himself was required to be active in the discharge of his trust, and to whom the same degree of *laches* can be imputed as to any other person concerned. *Fishwick vs. Sewell,* 4 *H. & J.*, 393, 430 ; *Hanson vs. Worthington,* 12 *Md. Rep.*, 418 ; *Glenn, Adm'r, d. b. n., of Lindenberger, vs. Hebb's Adm'r et al.*, 17 *Md. Rep.*, 260 ; *Bond vs. Hopkins,* 1 *Sch. & Lefr.*, 413,

440 ; 2 *Spence's Eq. Jur.*, 48 ; *Chambers vs. Chalmers et al.*, 4 *G. & J.*, 420 ; as to acquiescence of creditors, see *Hill on Trust.*, 266 ; *Whichcote vs. Lawrence*, 3 *Vesey*, 740 ; *Lister vs. Lister*, 6 *Vesey*, 632.

But as neither the Statute of Limitations nor the lapse of time is set up or relied upon by way of plea or demurrer, or in the answer filed in the cause, such defence is not allowable to the defendants ; and especially is such defence objectionable as made without the pleadings, when, "in order to displace the title of a party to relief, on the ground of his delay and acquiescence, *it lies upon the defendant by distinct and explicit evidence* to bring home to the plaintiff the knowledge of the fact on which the acquiescence is founded, and to which it refers." *Hill on Trust.*, 169, *side p. ; Randall vs. Errington*, 10 *Ves.*, 427 ; 2 *Spence's Eq. Jur.*, 717 ; *Story's Eq. Pl.*, secs. 503, 751 and 814 ; *Beames' Pleas in Eq.*, 331–333 ; *Blewitt vs. Thomas*, 2 *Ves.*, *Jr.*, 669, 671 ; *Crawford vs. Steverson*, 5 *Gill*, 443.

And in conformity to such principle is the well established rule, which requires the defendant to state, in his answer, all the facts and circumstances of which he intends to avail himself by way of defence ; "for it is a rule, that a defendant is bound to apprise a plaintiff by his answer *of the nature of the case* he intends to set up, (and that, too, in a clear unambiguous manner ;) and that a defendant cannot avail himself of any matter in defence which is not stated in his answer, even though it should appear in his evidence." 2 *Dan. Ch. Pl. & Pra.*, 814, 815, and cases there cited.

VI. As to the effect of the answer of the defendants, not having themselves personal knowledge of the matters of which they speak. *Pennington, Adm'r of Patterson, vs. Gittings' Ex'r*, 2 *G. & J.*, 208 ; *Clark's Ex'rs vs. Van Riemsdyk*, 9 *Cranch*, 153.

VII. The complainant is entitled to an account of rents

and profits. *Strike vs. McDonald & Son,* 2 *H. & G.,* 261 ; *Brooke et al. vs. Berry,* 2 *Gill,* 83 ; *Russell vs. Southard et al.,* 12 *How.,* 139 ; *Hudgins et al. vs. Kemp,* 20 *How.,* 45.

*George W. Smith, Jr., Zacharias S. Claggett* and *William T. Hamilton,* for the appellees.

First. The complainant insists that the proceedings on the trial of Benjamin Cushwa, upon allegations filed against him by Henry Seibert, and the verdict thereon, and also the testimony of Jacob Powles, a juror upon said trial, showing that John Cushwa was present, and examined as a witness at said trial, is competent evidence in this cause against John Cushwa. To all this testimony as appearing in the record, and wherever appearing in the record, the defendants, representatives of John Cushwa, excepted. It is against the first principles of justice, that a person can be bound by a verdict to which he is not a party ; as to John Cushwa, it is *res inter alios acta,* and not binding on him or his representatives. It was a trial in which he could exercise no right for his protection. He could not appear—could not strike a jury—could not introduce, examine or cross-examine witnesses—could not except to any ruling of the Court, or appeal therefrom, and was an entire stranger to the proceedings in fact and in law, and to allow such testimony to be introduced, to affect his rights, to divest him of his property, or in any way affect it, would be uprooting well settled and wisely defined principles of law. 1 *Starkie on Evidence,* 253 *and* 266 ; 1 *Greenleaf on Evidence, secs.* 522, 523 ; *Hunter vs. Hatton and Kendrick,* 4 *Gill,* 122; *Wright vs. Wright's Lessee,* 2 *Md. Rep.,* 429 ; *McClellan and wife vs. Kennedy et al.,* 8 *Md. Rep.,* 230 ; *McClellan vs. Kennedy,* 3 *Md. Ch. Dec.,* 234 ; *Key vs. Dent, Adm'r of Wood,* 14 *Md. Rep.,* 86 ; *Turpin vs. Thomas,* 2 *Hening & Munford,* 147 ; *Richardson vs. Hall et al.,* 21 *Md. Rep.,* 399 ; 2 *Smith's Lead. Cases,* 587, 590.

A verdict and judgment must be reciprocal, to be binding upon the parties. If upon trial of issues, or upon allegations filed by a creditor against the insolvent, it be found for the insolvent, will such finding validate all his deeds, assignments and contracts, as against his trustee, his other creditors, or the creditor filing the allegations, and prevent them or any of them from filing a bill in equity, to set aside such instruments, either for fraud in fact, or under the insolvent law? Does it prevent the trustee especially, who is not a party to the proceedings, and whose duty it is to secure the property thus assigned, for the benefit of the creditors? Surely not. The judgment of the Court is upon allegations of fraud against the insolvent, and debars him from the benefit of the law, and therefore, purely personal. Yet upon the ground that must admit this testimony, if admitted at all, it must be forever conclusive as against the grantee, John Cushwa. The verdict only, there being no judgment against the insolvent, is introduced to set aside the deed absolutely and unqualifiedly, and of its own intrinsic power and effect. It cannot be. 2 *Phillip's Ev.*, 293; 2 *Smith's Lead. Cases*, 687.

Second. The testimony of the trial and conviction on allegations being excluded, there is little evidence remaining in the cause. The deed from Benjamin to John Cushwa, sought to be set aside, was executed Nov. 14th, 1826. John Cushwa died in 1845, and Benjamin in 1848. In 1852, Ditto, the then insolvent trustee, filed the bill in this cause, against the representatives of John Cushwa. The answer of the defendants, representatives of John Cushwa, denies all the material allegations of the bill, and answers all the special interrogatories propounded, and is conclusive against relief, unless overthrown by superior evidence. There are two principal allegations in the bill, first, that Benjamin being indebted to John Cushwa in the sum of $7,300.00, and finding he was unable to pay said debt if

he paid his other creditors, and knowing that he would be obliged to apply for the benefit of the insolvent laws, he, under a view and with an expectation of being and becoming an insolvent debtor, did, on the 14th day of Nov., 1826, execute to John, his brother, the deed, conveying to him his real estate in payment of the debt he owed, thereby to give to him an undue and improper preference. Second :

"That allegations were filed against the said Benjamin by Henry Seibert, and tried at March Term, 1827, of Washington County Court, and a verdict of guilty found on trial of said allegations, and a judgment rendered by the Court on the verdict, whereby the said Benjamin was deprived of the full benefit of the Act of Assembly, and of his final discharge under the same, and that thereby, and by legal operation of such verdict and judgment, or verdict, the said deed was made absolutely null and void, so that no title passed to the said John Cushwa, but that it vested in him as trustee."

The remarks made upon the exceptions to the testimony of the record, of the proceedings in the trial had upon allegations, will apply to the latter charges in the bill.

In considering the first allegation in the bill, it is necessary to examine the law as it stood when the deed was made, November 14th, 1826. The Act of 1805, chapter 110, section 9, did not render a deed, preferring a creditor, inoperative; the insolvent was only debarred from the benefit of the law. *Owings & Cheston vs. Nicholson & Williams*, 4 *H. & J.*, 107.

The Act of 1812, chapter 77, section 1, was no doubt passed to remedy what was supposed to be a defect in the Act of 1805, and which provided, that all deeds conveyances, assignments, &c., to any creditors, securities, &c., with a view or under an expectation of being or becoming an insolvent debtor, and with intent thereby to give an undue and improper preference, &c., should be void, &c. There are numerous and well settled constructions of this

20　　　　　　v. 27

statute.   That part of the statute which provides that all deeds, &c., made to the creditors, &c., with a view and under an expectation of being or becoming an insolvent debtor, is defined to mean with a view and under the expectation of taking the benefit of the insolvent law. *Hickley vs. F. & M. Bank,* 5 *G. & J.,* 381 ; *The State vs. The Bank of Md.,* 6 *G. & J.,* 221.

To avoid a deed under these Acts it must be made with a view and under an expectation of taking the benefit of the insolvent laws, and with an intent thereby to give an undue and improper preference ; both the view and expectation of taking the benefit must combine with the intent, and the preference must be undue and improper. *Kennedy vs. Boggs,* 5 *H. & J.,* 411 ; *Cole, Trustee, vs. Albers & Runge,* 1 *Gill,* 412 ; *Beatty, Trustee, vs. Davis et al.,* 9 *Gill,* 211 ; *Glenn vs. Baker, &c.,* 1 *Md. Ch. Dec.,* 73 ; *Malcolm vs. Hall,* 1 *Md. Ch. Dec.,* 172 ; *Powles vs. Dilley,* 2 *Md. Ch. Dec.,* 119.

And further, under these Acts it is necessary to establish, in order to avoid a transfer by an insolvent, that it was so made with a view of taking the benefit, and also, that he voluntarily made such transfer.   The transfer is not considered voluntary when made at the request of the creditor.   *Crawfords and Sellman vs. Taylor,* 6 *G. & J.,* 323 ; *Cole, Trustee, vs. Albers & Runge,* 1 *Gill,* 412.   *Malcolm vs. Hall,* 1 *Md. Ch. Dec.,* 172 ; *McColgan vs. Hopkins,* 17 *Md. Rep.,* 395.

The deed attacked by the bill in this cause, was made when these laws and none others were in force.   True, afterwards, by the Act of 1834, chapter 293, no doubt passed because of the decision in *Crawfords and Sellman vs. Taylor,* transfers made within the provisions of the preceding Acts were declared void, though made upon request or otherwise, but required notice of insolvency to the grantee at the time of making the transfer.   *Gardner vs. Lewis,* 7 *Gill,* 403 ; *Brooks, Trustee of Thomas, vs.*

*Thomas and Jerome,* 8 *Md. Rep.,* 367 ; *Glenn vs. Baker,* 1 *Md. Ch. Dec.,* 73 ; *Malcolm vs. Hall,* 1 *Md. Ch. Dec.,* 172.

And the Act of 1845, chapter 139, condemns transfers, though made upon request and without notice. *Falconer, Trustee, vs. Clark & Griffith,* 7 *Md. Rep.,* 177.

These Acts show what the preceding Acts were by confirming their construction in changing the law. So taking the Acts and their construction when this deed was made, there can be no pretence for setting it aside. There is no testimony in the cause to establish what is required by the decision in *Crawfords and Sellman vs. Taylor.*

The complainant relies upon the proximity of time from the execution of the deed, to the application of Benjamin, the deed being made on the 14th of November, 1826, and the application being made December 19th, 1826. But mere proximity of time is not sufficient proof of the intent of the insolvent when he made the deed. *Malcolm vs. Hall,* 1 *Md. Ch. Dec.,* 172 ; *Malcolm vs. Hall,* 9 *Gill,* 177.

But still more, if proximity of time should determine his intent, by the authority of *Crawfords and Sellman vs. Taylor,* it is not the intent alone of the insolvent, under the Act of 1812, that invalidates a deed, but it must be voluntary and not made upon request, and the fact of its being voluntary, must be established by proof, so that at the time this deed was made, under the laws then in existence, if upon the creditor's importunity and request he gets secured, he *is* safe, though the party should apply next day ; and, besides, when this deed was made, imprisonment for debt existed, and Benjamin was really in jail when he applied, so that, however good may have been his motives when he made the deed, he might have been obliged to apply to relieve himself from imprisonment. He might make a deed upon request without any design of giving an undue preference, and, indeed, without any intent to take the

Syester, Trustee of Cushwa, *vs.* Brewer *et al.*

benefit, and yet, the next day be put in jail and obliged to apply to obtain his personal discharge from custody.

3d. By the common law a debtor may prefer one creditor to the exclusion of others, either by payment or by a *bona fide* transfer of his property. *Hickley vs. F. & M. Bank,* 5 *G. & J.,* 377 ; *The State of Maryland vs. The Bank of Md.,* 6 *G. & J.,* 205 ; *Union Bank of Tennessee vs. Ellicot, Morris and Gill,* 6 *G. & J.,* 363 ; *Rich et al. vs. Levy et al.,* 16 *Md. Rep.,* 74 ; *McColgan vs. Hopkins,* 17 *Md. Rep.,* 395 ; *Wood vs. Dixie,* 7 *Adol. & Ellis.,* (53 *Eng. C. L. Repts.,*) 892.

4th. The *onus probandi* is upon the party assailing a deed for fraud, to shew it. *Glenn vs. Grover & McColm,* 3 *Md. Rep.,* 212 ; *Stewart vs. Union Bank of Md. et al.,* 2 *Md. Ch. Dec.,* 58 ; *Glenn, Trustee, vs. Grover,* 3 *Md. Ch. Dec.,* 29 ; *Anderson vs. Tydings,* 3 *Md. Ch. Dec.,* 167.

5th. The deed is *prima facie* proof of the consideration. *Glenn vs. Grover and McColm,* 3 *Md. Rep.,* 212 ; *Faringer vs. Ramsay et al.,* 2 *Md. Rep.,* 365 ; *Moore et al. vs. Blondheim et al.,* 19 *Md. Rep.,* 172.

6th. As to the consideration in this deed there can be no difficulty. The land, according to the testimony, was worth about $20 per acre. There is nothing definite in regard to its value. This valuation of the land is made upon it disencumbered ; but the wife of Benjamin Cushwa did not sign the deed, and after his death her dower was laid off to her, and she has enjoyed it ever since, and is still living. The consideration was full and adequate. Adequacy of consideration may be important as to *bona fides,* but in no case can inadequacy of consideration alone establish fraud. 1 *Smith's Leading Cases,* 46 ; *Hicks vs. Hicks and Norris,* 5 *G. & J.,* 86 ; *Mayor, &c., of Balt. vs. Williams,* 6 *Md. Rep.,* 271 ; *Feigley vs. Feigley,* 7 *Md. Rep.,* 537.

7th. The answer of the defendants, Brewer and John S. Cushwa, was sworn to. By the bill special interroga-

torics were put to John S. Cushwa, to be answered by him under oath. The answers are evidence for the defendants. *Roberts et al. vs. Salisbury et al.*, 3 *G. & J.*, 425 ; *Feigley, vs. Feigley*, 7 *Md. Rep.*, 537 ; *Rich et al. vs. Levy et al.*, 16 *Md. Rep.*, 74.

Where the defendants do not admit the allegations of the bill, the complainant is put to his proof to sustain them. *Dugan et al. vs. Gittings et al.*, 3 *Gill*, 157.

Where a bill requires answers to special interrogatories, such answers can be applied to the whole bill. *Glenn vs. Grover and McColm*, 3 *Md. Rep.*, 212 ; *Glenn, Trustee, vs. Grover and McColm*, 3 *Md. Ch. Dec.*, 29.

8th. Limitations are relied upon by the answers. The deed was made in 1826. The bill was filed in 1852, after all the parties to the original transaction were dead. Henry Rickenbaugh, the creditor, apparently moving in this cause, became a judgment creditor of Benjamin in 1827 ; one judgment being for $156, and another for £20. *Dugan et al. vs. Gittings et al.*, 3 *Gill*, 138–162 ; *Hertle and Wife vs. Schwartze and McDonald*, 3 *Md. Rep.*, 383 ; *McDowell vs. Goldsmith*, 2 *Md. Ch. Dec.*, 370 ; 2 *Danl. Ch. Pl. & Pr.* 735, 737 ; *Angell on Lim.*, 511.

The only trusts not affected by the statute are those purely technical, or trusts which are creatures of a Court of Chancery, and alone cognizable therein. *Beckford and others vs. Wade*, 17 *Vesey*, 97 *to* 100 ; *Kane vs. Bloodgood*, 7 *John. Ch. Rep.*, 124 ; *White vs. White*, 1 *Md. Ch. Dec.*, 53.

Proceedings in insolvency are entirely at law. *Purviance, Trustee of Bosley, vs. Glenn's Exc'rs*, 8 *Md. Rep.*, 206.

Courts of Equity have nothing to do with them. The rights, duties and responsibilities of a trustee are defined by law. The creditor has his full redress at law against him, and in no wise in equity. The trustee is required to give bond for the faithful performance of his trust, and

is liable on this bond at law, at the suit of any creditor.
The trustee can be removed by the Court. *Act of* 1805,
*chap.* 110, *sec.* 4.

The Court can direct the trustee to sell and assign the
property conveyed to him, at such time and on such terms
as it shall think most advantageous to the creditors. *Act*
*of* 1805, *chap.* 110, *sec.* 7.

The deed conveyed all the property owned by the insol-
vent and invested it in the trustee, not by the deed, but
by operation of law. The creditors of Benjamin knew of
the deed to John Cushwa ; the allegations stated it, and
the trial was upon it ; they knew of the trustee's deed to
John ; notice was full and complete to the creditors in 1826
and 1827 ; they never moved in it ; they never pre-
tended to claim the land ; never appeared in Court to
obtain an order for the sale of it ; never moved for
the removal of John, or the appointment of a per-
manent trustee ; their remedy was full, ample and com-
plete ; instead of moving against John, Rickenbaugh
sued Benjamin after he petitioned, and recovered an abso-
lute judgment against him in 1827, and did nothing
afterwards. Again, there is an express provision in the
same Act, section 10, that if any complaint shall be made
to the county Court of the conduct of any trustee, by any
creditor, &c., the county Court may call such trustee
before it and inquire into the cause of complaint in a
summary way, and make such rules and orders as shall
be necessary for the accomplishment of the object of the
trust, and punish the trustee for contempt of Court in
not obeying the same, and if it be thought necessary,
remove the trustee and appoint another person.

Here is a full and ample remedy. But not a complaint
made nor action brought. The law will presume that the
trustee discharged his duty. After a long lapse of time,
without complaint or suit brought, papers are lost and all
parties are dead, in what condition would trustees of this

sort be placed if time should not be permitted to cover the case with its mantle of oblivion? But again, the county Court can limit and appoint the time for creditors to bring in their claims; same Act, section 12. In fact, every power was conferred and every right perfected under the law to secure a sure and speedy settlement of the estate, and a full and rigid responsibility of the trustee as to any property owned by the insolvent, or as to any discharge of his duty. Further, when a deed is impeached for fraud by creditors, the grantees can rely on the Statute of Limitations, and to an assignment made to a favored creditor, and attacked by the trustee, the statute applies. *McDowell et. al. vs. Goldsmith,* 6 *Md. Rep.,* 319; *Same, vs. Same* 2 *Md. Ch. Dec.,* 370; *Teackle, Trustee, vs. Gibson,* 8 *Md. Rep.,* 70; *Green, Ex'tx of Green, vs. Johnson & Wife,* 3 *G. & J.,* 389.

And creditors are recognized as parties in all these transactions. The trustee is appointed for their benefit. Creditors can file their bill against insolvents to set aside deeds, &c., but must make the trustee a party. It must be remembered that in the views presented we have been considering John Cushwa as trustee, as to the lands in controversy. But we hold that they were his own and not held in trust. He had the deed for them duly recorded, and held and claimed them as his own, and were so claimed and held by him and his representatives from the year 1826 to 1852, before the pretence of a claim was made by any creditor. He held the lands conveyed to him openly, publicly and adversely as his own, with his deed recorded, and with the full knowledge of the creditors.

On the failure of Benjamin Cushwa to obtain his release under the insolvent law, and by his conviction on the allegations filed against him, all his property was divested out of the hands of his provisional trustee, and reverted back to the insolvent. The original object of the trust having failed, the property was liable to be

taken in execution, as if the party had never applied. *Act of* 1814, *chap.* 122, *sec.* 2 ; *Kennedy vs. Boggs*, 5 *H. & J.*, 403.

The creditors having their remedy in 1827, the Statute of Limitations began to run from that time against them or their representatives, and any one interested, even a fraudulent grantee, may plead the same. *McDowell vs. Goldsmith*, 2 *Md. Ch. Dec.*, 390 ; *Same vs. Same*, 6 *Md. Rep.*, 319.

9th. The whole demand of the bill, in all its parts and objects, is stale and is for the benefit of a stale claim. This was urged at the hearing ; Courts of their own mere motion will refuse relief when it appears that the demand sought to be enforced is stale and antiquated. It is one of the most wise, just and beneficial exercises of equitable jurisprudence. *Hertle vs. McDonald*, 2 *Md. Ch. Dec.*, 128 ; *Hepburn's Case*, 3 *Bland.*, 95 ; *Steiger's Adm'r vs. Hillen*, 5 *G. & J.*, 121 ; 2 *Story's Eq., sec.* 1520, *a.*

CRAIN, J., delivered the opinion of this Court.

The bill in this cause was filed on the 22d day of November, 1852, by the trustee, for the benefit of the creditors of Benjamin Cushwa, an insolvent debtor, to set aside a deed executed by Benjamin Cushwa to his brother John, on the 14th day of November, 1826, as void under the insolvent laws of this State.

On the final hearing of the cause, the Circuit Judge for Washington County, dismissed the bill and filed an opinion, stating at length the reasons for his conclusions. By this appeal we are required to review his decision. We have carefully examined all the facts found in the record, and read with attention the opinion delivered by the learned Judge, and are of opinion that the conclusions stated by him in general are correct. As the deed of the 14th of November, 1826, was executed for a valuable consideration, it could not be assailed as fraudulent and void

Syester, Trustee of Cushwa, *vs.* Brewer *et al.*

at common law or under the Statute of Elizabeth, as it is well established that by the common law a debtor may secure one creditor to the exclusion of others by a *bona fide* transfer of his property. But the charge in the bill is, that the deed was void under our insolvent system, as it was made with a view and under an expectation of taking the benefit of the insolvent laws and also with intent thereby to give his brother John an undue and improper preference. To maintain this proposition, the appellant's counsel has insisted with great earnestness and ability, that the verdict upon the allegations against Benjamin Cushwa, tried in the county Court for Washington County, was an adjudication *in rem.*, and was conclusive upon the rights of John Cushwa, the grantee in the deed; but we are of opinion that no such operation and effect can legally be given to that verdict. In this country there are adjudications *in rem.* in admiralty cases and under seizures for a violation of the revenue laws, recognized as valid and conclusive, but no such power was conferred on the county Court by the insolvent system of this State. The character of a judgment *in rem.* is very aptly stated in 2 *Smith's Leading Cases*, 585, where the author says, " a judgment *in rem.* I conceive to be an adjudication pronounced upon the status of some particular subject matter, by a tribunal having competent authority for that purpose, such an adjudication being a most solemn declaration from the proper and accredited quarter, that the status of the thing adjudicated upon is as declared, concludes all persons from saying that the status of the thing adjudicated upon was not such as declared by the adjudication." No such pretension or claim can be made for the tribunal before whom these allegations were tried. The status of the property was not put in issue or adjudicated by this proceeding. On the contrary, the only issue was the truth or falsehood of the allegations, and his conviction of the impropriety and illegality of the act was a judgment *in personam* which

precluded him forever from the benefit of the insolvent laws.

But it was also contended by the counsel for the appellant, that assuming it was not an adjudication *in rem.*, it was nevertheless to be admitted as evidence in the cause, "of that state of mind and the view and expectation under which the deed was executed, that rendered the conveyance void and vested the property in John Cushwa as trustee." This proposition concedes to the verdict the operation and effect of a judgment *inter partes.* This Court acknowledges the rule as to the conclusiveness of a judgment of a Court of competent jurisdiction between the same parties and privies, and has uniformly applied it, but it was well said by Chief Justice Holt, that no record of a verdict can be given in evidence but such whereof the benefit may be mutual. That is such as might have been given in evidence for the plaintiff or defendant, upon the principle that estoppels are mutual and bind all parties and privies. Can it be contended that a verdict on these allegations could validate the title of John Cushwa, the grantee in the deed? Certainly not; nor can it bind or prejudice the rights of John Cushwa; he was no party to the proceeding; had no opportunity of calling witnesses or cross-examining them on the other side; could not except to any ruling of the Court or appeal therefrom, and was a stranger to the whole proceeding. Rejecting it as a judgment binding and conclusive on the rights and property of John Cushwa, yet it was argued and pressed upon the Court, that the verdict was at least *prima facie* evidence and admissible as a muniment of title, for by the finding it was contended, there was a charge produced in the vesting of the estate attempted to be conveyed. We cannot sanction this proposition. It claims for the verdict that John Cushwa was divested by it of his title as grantee, and received the estate as trustee for Benjamin. As John Cushwa was not a party to the suit, the proceeding was *res inter alios acta* and not

Syester, Trustee of Cushwa, *vs.* Brewer *et al.*

admissible for the purpose of impairing his rights; he was the grantee of Benjamin Cushwa for a valuable consideration, prior to his application for the benefit of the insolvent laws, and no act or declaration of Benjamin's, subsequent to the date of the deed, was admissible evidence against him. But the counsel for the appellant insisted that this verdict was *prima facie* evidence against John Cushwa, and shifted the burden of proof on him to show that Benjamin had no intention of evading the provisions of the insolvent system when he executed this deed. He insisted that the cases in 4 *Rawle*, 234; 5 *Halstead*, 217, and 9 *Ves.,* 609, were analogous cases and fully maintained his position; on an examination we find they were all cases of inquisitions *de lunatico inquirendo* and regulated by particular statutes, and are merely held as evidence of the incapacity of the lunatic to make valid contracts within the time ascertained by the verdict, and are not held as binding on strangers. The case relied on in 7 *How.,* 627, was a case of proceedings in bankruptcy and was also regulated by the statute, and was an attempt on the part of a creditor of Benjamin Brandon, the bankrupt, to set up a lien on the bankrupt's property against the assignee of the bankrupt's estate, and it was held by the Court, "that a decree of the District Court sitting in bankruptcy was sufficient evidence as against those who were not parties to the proceeding, to show, that there was a debt due the petitioning creditor; that the bankrupt was a merchant or trader within the meaning of the act; and that he had committed an act of bankruptcy." This decision was made in virtue of the several sections of the bankrupt law, and was necessary to maintain its validity and operation on the bankrupt's estate. In our insolvent system in 1826 there was no such provision, and therefore a verdict on allegations against the insolvent cannot operate to the prejudice of his grantees previous to his application. Having excluded the testimony of the trial and convic-

tion of Benjamin Cushwa on allegations, as inadmissible against John Cushwa, we will examine the record to ascertain whether it contains evidence sufficient to satisfy our minds, that the deed from Benjamin to his brother John was made with a view and under an expectation of taking the benefit of the insolvent laws, and with an intent thereby to give an undue and improper preference. From repeated decisions of this Court, both intents must be found to exist or the conveyance will not be disturbed. The leading case on this interesting question was *Kennedy vs. Boggs,* 3 *H. & J.,* 411; in that case Chief Justice Chase, in delivering his opinion, says, "When does a person become an insolvent debtor under the insolvent laws ? I know no criterion by which it can be so well and certainly known as the *time* of filing his petition. It is then he acknowledges his inability to pay his debts and applies for relief." Until he does apply, there can be no proof of a mental intention, unless he avows his determination, as the intention cannot be implied from his circumstances. And in the case of *Beatty against Davis,* 9 *Gill,* 211, and in the case of *Crawfords and Sellman vs. Taylor, Trustee of Ford,* 6 *Gill & John.,* 323, the law is clearly settled, that to avoid a transfer under the insolvent law, it is necessary to establish, that the debtor made the transfer with a view or expectation of taking the benefit of the insolvent law, and also that he *voluntarily* made the transfer sought to be vacated. The time which elapsed between the execution of the deed and the application for the insolvent law, precludes the idea according to the opinion of Chief Justice Chase that at that time he had the intention of taking the benefit, whilst in *Malcolm vs. Hall,* 9 *Gill,* 177, the learned Judge said, "mere proximity in point of time between the date of the assignment and the application for the benefit of the insolvent laws, standing alone, without any supporting circumstances, is not to be received as adequate or reliable proof of what the insolvent intended

at the time of executing the assignment.'' But we must find that he made the conveyance voluntarily, and can this be done, when John Cushwa had paid to various persons, for Benjamin, a large sum of money, amounting, with the advances made to Benjamin, to $7,300, the full value of the real estate, incumbered, as it was, with a contingent widow's dower? After this length of time we will make every fair presumption to support the deed, made for a valuable consideration, and presume that it was made at the request of John Cushwa. There is another consideration sufficient in our opinion to negative the intent at the time he executed the deed, and that is, that Benjamin was really in jail when he applied, so that however good may have been his motive when he made the deed, he was obliged to apply to relieve himself from imprisonment. But we find in the record that subsequent to this deed to his brother John, he executed three other conveyances of valuable personal property to three different persons. It does not appear that any proceedings were instituted to vacate them on the ground that they were made in fraud of the insolvent system, or that the property vested in the trustee. But the *onus* of the proof was on the appellant to show, that the deed was made with the view and under the expectation of taking the benefit and to give an undue and improper preference thereby to the grantee. This conveyance was made before the Act of 1834, chapter 292, and therefore that act does not apply to this case, and in the absence of proof, we must find that the deed was executed in good faith and for a valuable consideration.

As this is an appeal to the conscience of the Court, it is our duty to examine the facts of the case in reference to its equity. John Cushwa, the grantee in the deed, lived nearly twenty years after its execution, and Benjamin, the grantor, more than twenty years after his application for the benefit of the insolvent laws, and the pre-

sumption of law is, after such a lapse of time, that the insolvent estate was settled and closed, and a Court of Chancery would not entertain a bill filed by the trustee of the insolvent estate against grantees under deeds from the insolvent previous to his application, unless the Court was satisfied that there were *bona fide* subsisting debts due from the insolvent. In this case it appears only one party alleges himself a creditor of Benjamin Cushwa at the time of his application, and he is Henry Rickenbaugh, who obtained two judgments against Benjamin Cushwa at November Term, 1827, of the county Court for Washington County, amounting to about $230, with interest; these judgments were obtained after Benjamin Cushwa petitioned, and after the verdict of the jury against him on the allegations. Rickenbaugh had his election to proceed against his debtor's property by a *fi. fa.*, or against his person by a *ca. sa.* He had also an undoubted right to file a bill in equity to vacate the conveyance to John Cushwa, if it were fraudulent or made in view of the insolvent system. Such a proceeding was instituted in the case of *Swan vs. Dent and Richards,* 2 *Md. Ch. Dec.,* 111, and 7 *Gill,* 366. That case was analogous to this in the *charges* in the bill. Dent being largely indebted, conveyed all his property to his daughter, Priscilla Richards, for the sum of $7,000, and three months thereafter applied for the benefit of the insolvent laws. George T. Richards, the husband of his daughter Priscilla, was appointed his trustee. His creditors filed allegations against him, and the jury found him guilty. The Chancellor vacated the conveyance, the property was sold by trustees and Dent's creditors paid. The creditors of Dent did not, like Henry Rickenbaugh, sleep for twenty years on their rights and acquiesce in the fraudulent conveyance, but immediately they discovered he had executed the deed they filed their bill. Admitting the theory of the appellant's counsel was correct, Rickenbaugh had also a full and complete

remedy at law, as he could have sued the trustee's bond of John Cushwa, and held him and his sureties responsible in a Court of law for his debt. The Court will assume that he knew what the law was, and whenever a party knows his rights and does not assert them for twenty years, but acquiesces in the acts of others, we will apply to him the maxim, "*vigilantibus non dormientibus servit lex.*"

The view which we have taken of the rights of John Cushwa under this deed disposes of the argument of the appellant's counsel, that it was an express trust, and the Statute of Limitations did not apply ; for we have said the deed from Benjamin to John being *bona fide* and for a valuable consideration, vested the estate in John, as the grantee and owner, against the whole world. As we have decided that it is not an express trust, we think laches and lapse of time a full bar to the appellant's recovery. It was contended that the defendants in their answer had not relied upon this defence, and could not avail themselves of it at the hearing. But we are of opinion that the Court itself, in its own discretion, may refuse to grant relief after a limited period, even though the statute is not pleaded and the bill is not demurred to. See *Lewin on Trusts*, 617, (24 *Law Lib.*) Laches and lapse of time are as effectual as the plea of limitations, and they are analogously applied in equity. 2 *Story's Equity, sec.* 1520, *a ;* 36 *Missi. Rep.*, 320 *to* 323 ; 11 *B. Monroe,* 161. What will constitute such laches and lapse of time as will bar the right of parties to recover on a claim purely equitable, all the authorities say, must depend upon the particular facts and circumstances of each case. *Hanson & Wife et al. vs. Worthington et al.,* 12 *Md. Rep.*, 441. The deed to John Cushwa was made in 1826, and the bill was filed in 1852 ; the creditors of Benjamin knew of the deed to John ; the notice was full and complete to the creditors in 1826 and 1827 ; they never moved in it ; they never

pretended to claim the land; never appeared in Court to obtain an order for the sale of the real estate; took no action to remove John, or appoint a permanent trustee. For twenty years no complaint was made or action brought against the trustee. After such a length of time the Court is bound to presume the trustee had done his duty. Stale claims do not meet the favorable consideration of a Court of Equity, which only lends its aid to reasonable diligence, and has a right in the exercise of its equitable jurisdiction not to sanction antiquated claims. Entertaining the views expressed in this opinion, we affirm the decree of the Circuit Court with costs.

*Decree affirmed with costs.*

(Decided 27th June, 1867.)